**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Doh H.,

          Petitioner,

v.

Todd Blanche, *in his official capacity as Acting Attorney General of the United States*; Markwayne Mullin, *in his official capacity as Secretary of the U.S. Department of Homeland Security*; Todd M. Lyons, *in his official capacity as the acting director of U.S. Immigration and Customs Enforcement*; David Easterwood, *in his official capacity as the Acting Director, St. Paul Field Office of the United States Immigration and Customs Enforcement*; and Eric Tollefson, *in his official capacity as Sheriff of Kandiyohi County*,

          Respondents.

File No. 26-CV-02413 (JMB/SGE)

**ORDER**

---

Coryn Rosemarie Johnson, James H. Binger Center for New Americans, Minneapolis, MN; and Nadia Anguiano, University of Minnesota Law School, Minneapolis, MN, for Doh H.

David W. Fuller and Carl Berry, United States Attorney's Office, Minneapolis, MN, for Respondents Todd Blanche, Markwayne Mullin, Todd M. Lyons, and David Easterwood.

1

This matter is before the Court on Petitioner Doh H.'s[1] Petition for Writ of Habeas Corpus (Petition) under 28 U.S.C. § 2241. (Doc. No. 1 [hereinafter, "Pet."].) Respondents Todd Blanche, Markwayne Mullin, Todd M. Lyons, David Easterwood (Federal Respondents), and Eric Tollefson (together, with the Federal Respondents, Respondents) are named in the Petition. For the reasons explained below, the Court grants the Petition.

### FINDINGS OF FACT

1.      Doh H. is a native of Thailand and citizen of Myanmar who has resided in the United States for approximately fourteen years. (Pet. ¶ 33.)[2]

2.      In 2012, Doh H. lawfully entered the United States as teenage refugee. (*Id.* ¶ 33; Doc. No. 7 ¶ 4.)

3.      In 2014, Doh H.'s status was adjusted to Lawful Permanent Resident (LPR). (Pet. ¶ 33; Doc. No. 7 ¶ 5.)

4.      In March 2020, Doh H. pleaded guilty in South Dakota state court to one count of grand theft, in violation of South Dakota Codified Law sections 22-30-A-1 and 22-30A-17. (Pet. ¶ 34; Doc. No. 7-5.) The South Dakota court ordered the imposition of a ten-year sentence suspended and placed Doh H. on two years of probation. (Pet. ¶ 34;

---

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in immigration cases.

[2] Because Respondents did not contest any of the factual allegations in the Petition, these allegations are deemed admitted. *See, e.g.*, *Bland v. California Dep't of Corr.*, 20 F.3d 1469, 1474 (9th Cir. 1994) ("When the State's return fails to dispute the factual allegations contained in the petition and traverse, it essentially admits those allegations."), *overruled on other grounds by Schell v. Witek*, 218 F.3d 1017 (9th Cir. 2000). (Doc. No. 6 ("The material facts are not in dispute.").)

Doc. No. 7 ¶ 6.)

5.      On June 29, 2020, the South Dakota court revoked Doh H.'s suspended execution of sentence and imposed a sentence of ten years' imprisonment (with four years suspended) after determining that he had violated the terms of probation by allegedly not remaining law-abiding and for drinking alcohol.  (Pet. ¶ 34; Doc. No. 7 ¶¶ 7–9.)

6.      On June 30, 2020, Doh H. began serving his custodial sentence with the South Dakota State Penitentiary.  (Pet. ¶ 34.)

7.      On February 1, 2022, while Doh H. was incarcerated in South Dakota, Immigrations and Customs Enforcement (ICE) issued a Notice to Appear (NTA), which charged Doh H. with a single charge of removal under 8 U.S.C. § 1227(a)(2)(A)(iii), as a non-citizen convicted of an aggravated felony offense, as defined by 8 U.S.C. § 1101(a)(43)(G).  (*Id.* ¶ 35; Doc. No. 7 ¶ 11; Doc. No. 7-1; Doc. No. 7-2.)

8.      Also on February 1, 2022, ICE issued a Form I-247, also known as a "detainer," to the South Dakota Department of Corrections.  (Pet. ¶ 36.)

9.      Doh H. remained in ICE detention until April 27, 2022, when ICE released Doh H. on his own recognizance.  (Pet. ¶¶ 4, 36, 37; Doc. No. 7-6; Doc. No. 1-2 ("Due to medical issues ERO St. Paul released [Doh H.] on an order of recognizance."); Doc. No 1-3; Doc. No. 7-6.)

10.      On June 7, 2023, Doh H. appeared for an immigration court hearing in St. Paul and denied the charge of removability.  (Pet. ¶ 38.)

11.      Later, on January 4, 2024, an IJ dismissed the charge of removability against Doh H. on grounds that he was not removeable as charged; specifically, that the South

Dakota statute to which Doh H. pleaded guilty was not a categorical match to the aggravated felony theft definition in 8 U.S.C. § 1101(a)(43)(G).  (*Id.* ¶ 38.)  The IJ concluded that "DHS has not met its burden of showing by clear and convincing evidence that [Doh H.] is removable under INA § 237(a)(2)(A)(iii)."  (Doc. No. 7-3 at 4.)  The IJ terminated removal proceedings.  (Pet. ¶ 38; Doc. No. 7 ¶ 12; Doc. No. 7-3.)

12.    On January 17, 2024, the Department of Homeland Security (DHS) appealed the IJ's termination of removal proceedings to the Board of Immigration Appeals (BIA). (Pet. ¶ 39; Doc. No. 7 ¶ 12.)

13.    At this time, DHS's appeal to the BIA remains pending.  (*Id.* ¶ 39.)

14.    On February 13, 2026, ICE issued a detainer to the South Dakota State Penitentiary upon becoming aware that Doh H. was in their custody.  (Doc. No. 7 ¶ 13; Doc. No. 7-4.)

15.    South Dakota State Penitentiary released Doh H. from their custody on February 17, 2026.  (*Id.* ¶ 14.)  ICE was not made aware of Doh H.'s release.  (*Id.*; Doc. No. 7-1.)

16.    On February 26, 2026, a South Dakota state Parole Officer notified ICE that Doh H. was scheduled to report to the parole office on March 5, 2026.  (Doc. No. 7 ¶ 15.)

17.    On March 5, 2026, ICE conducted an arrest of Doh H. in Sioux Falls, South Dakota at his parole office.  (Pet. ¶ 41; Doc. No. 7 ¶ 16; Doc. No. 7-5.)

18.    During the arrest, ICE confiscated items of Doh H.'s personal property, including his identification documents, employment authorization documents, cell phone, and a bicycle.  (*Id.* ¶ 41.)

19.    Doh H. has remained detained at the Kandiyohi County Jail in Willmar, Minnesota.  (Pet. ¶ 42; Doc. No. 7 ¶ 17.)

20.    On April 29, 2026, Doh H. filed his Petition.  (*See* Pet.)

21.    On April 30, 2026, the Court ordered Respondents to file a response to the Petition on May 4, 2026, at  11:00 a.m.  (Doc. No. 4.)  The Federal Respondents timely filed a response.  (Doc. No. 6; *see also* Doc. No. 7.)  Tollefson has not filed a response.

## DISCUSSION

In his Petition, Doh H. argues that, when he was detained in March 2026 after years of release, Respondents violated the following: (1) his substantive and procedural due-process rights under the Due Process Clause of the Fifth Amendment, (2) his right to be free from unlawful seizures under the Fourth Amendment, and (3) their own regulations. (*See* Pet.)  Doh H. seeks his immediate release from detention and the return of his personal property, among other things.  (*See id.* at 44–45.)  The Federal Respondents argue that their unilateral re-detention of Doh H. was effected pursuant to DHS's authority under 8 C.F.R. § 236.1(c)(9) and because Doh H.'s detention is mandatory under 18 U.S.C. § 1226(c). (Doc. No. 6.)  For the reasons set forth below, the Court grants the Petition in part.

### A.    Right to Habeas Relief

A writ of habeas corpus may be granted to any person who demonstrates he is in custody in violation of the Constitution or laws of the United States.    28 U.S.C. § 2241(c)(3); *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (concluding that the Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States" (citing U.S. Const., Art. I, § 9, cl. 2)); *Aditya W.H. v.*

*Trump*, 782 F. Supp. 3d 691, 702 (D. Minn. 2025).  For most of the nation's history, habeas review "has remained a critical check on the Executive, ensuring that it does not detain individuals except in accordance with law."  *Hamdi*, 542 U.S. at 525 (quotation omitted). The right to challenge the legality of a person's confinement through a petition for a writ of habeas corpus "extends to . . . immigration-related detention."  *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citation omitted).  The petitioner bears the burden of proving that his detention is illegal by a preponderance of evidence.  *Jose J.O.E. v. Bondi*, No. 25-CV-3051 (ECT/DJF), 2025 WL 2466670, at *5 (D. Minn. Aug. 27, 2025) (citing *Aditya W.H.*, 782 F. Supp. 3d at 703).

**B.    Due Process**

The Court starts with Doh H.'s argument that the manner in which Respondents detained him in 2026—i.e., suddenly and without notice after years of release on his own recognizance—violated his right to procedural due process under the Fifth Amendment.[3] The Constitution also guarantees every person in the United States due process of law, including persons who are not United States citizens.  *E.g.*, *Lopez v. Heinauer*, 332 F.3d 507, 512 (8th Cir. 2003) ("The Supreme Court has long recognized that deportable aliens are entitled to constitutional protections of due process." (citing *Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903))); *see also, e.g.*, *Trump v. J.G.G.*, 604 U. S. 670, 672–73, (2025) (*per curiam*) ("'It is well established that the Fifth Amendment entitles aliens to

---

[3] The Court notes that Doh H.'s due-process argument is the only one to which the Federal Respondents offered a response.

due process of law' in the context of removal proceedings." (quoting *Reno v. Flores*, 507 U.S. 292, 306, (1993))); *Zadvydas v. Davis*, 533 U.S. 678, 695 (2001) ("[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").

To determine whether a civil detention violates a detainee's due process rights, courts apply the familiar three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and noting that, "when considering due process challenges to [discretionary noncitizen detention] other circuits . . . have applied the *Mathews* test"); *see also Hernandez-Lara v. Lyons*, 10 F.4th 19, 27 (1st Cir. 2021) (applying *Mathews* test to § 1226(a) challenge); *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (same). Pursuant to *Mathews*, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

The Federal Respondents assert that Doh H. was afforded all process he was due. The Federal Respondents take the position that they retain "continuous authority over the custody and release of non-citizens pending removal proceedings" under 8 C.F.R. § 236.1(c)(9), which provides, in full, as follows:

> When a [non-citizen] who, having been arrested and taken into

7

custody, has been released, such release may be revoked at any time in the discretion of [specific DHS officials], in which event the [non-citizen] may be taken into physical custody and detained.    If detained, unless a breach has occurred, any outstanding bond shall be revoked and canceled.

*Id.* In other words, the Federal Respondents assert that section 236.1(c)(9) authorized their no-notice re-detention of Doh H. after four years of release.

For his part, Doh H. argues—with supporting caselaw—that *Mathews* requires DHS officials invoking section 236.1(c)(9) to make at least a showing of material changed circumstance before revoking release—after all, "[o]nce a noncitizen has been released, the law prohibits federal agents from re-arresting him merely because he is subject to removal proceedings." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017) (providing that, where a release decision was made by a DHS officer, not an IJ, DHS must show changed circumstances before re-arrest).    Doh H.'s position has clear support—numerous other courts around the country have concluded the same. *See, e.g., Yohan A.-G. v. Warden*, No. 2:26-CV-0997 (LK), 2026 WL 1162705, at *5 (W.D. Wash. Apr. 29, 2026) (providing that DHS requires a showing of changed circumstances before revoking release under section 236.1(c)(9), and citing November 2025 DHS brief setting forth same); *Rosado v. Figueroa*, No. No. 25-CV-2157 (CDB), 2025 WL 2337099, at *13 (D. Ariz. Aug. 11, 2025) (concluding that petitioner's "re-detention, after six years of being released on recognizance from an initial detention on inspection, was without prior notice, a showing of changed circumstances, or a meaningful opportunity to object, and therefore she was not afforded the procedural requirements of the Fifth Amendment"), *report and recommendation adopted* 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); *Lopez v. Sessions*,

8

No. 18-CV-4189 (RWS), 2018 WL 2932726, at *11 (S.D.N.Y. June 12, 2018) (concluding that petitioner's re-detention "in the absence of any procedure or evidentiary findings," like, for example, changed circumstances, "establishes the risk of erroneous deprivation of a liberty interest").

The Federal Respondents do not engage with Doh H.'s constitutional arguments and citations to supporting caselaw. Instead, they insist (with citation only to the regulation language itself) that, under 8 C.F.R. § 236.1(c)(9), "DHS was not required to provide a pre-revocation hearing before taking Respondent back into custody" and, therefore "the process here fully complies with constitutional requirements."[4] (Doc. No. 6 at 4–5.) The Federal Respondents' failure to develop their arguments[5] or distinguish the law cited by Doh H. is sufficient grounds to grant the Petition.

---

[4] The Court notes that section 236.1(c)(9) provides that release may be revoked at the discretion of only certain DHS officials—specifically, "the district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge (except foreign)." 8 C.F.R. § 236.1(c)(9). The record in this case shows that the re-detention determination was not made by any of these officials—instead, it was made by a "Deportation Officer." (Doc. No. 7-4 at 6.) That being the case, even if the Court accepted the Federal Respondents' argument that section 236.1(c)(9) alone justified Doh H.'s re-detention without notice or showing of changed circumstances, the Court disagrees that "ICE's re-detention decision shows that the agency complied with the applicable regulatory requirements." (Doc. No. 6 at 5.)

[5] The Court further notes that the Federal Respondents' position that section 236.1(c)(9) applies after an underlying removal proceeding has been dismissed in a non-citizen's favor is supported with nothing more than their *ipse dixit*.

**ORDER**

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT the Petition (Doc. No. 1) is GRANTED as follows:

1.  Respondents are ORDERED to release Petitioner Doh H. <u>immediately</u>, and in any event no later than <u>4:00 p.m. CT on May 7, 2026</u>.

2.  On or before <u>11:00 a.m. CT on May 8, 2026</u>, counsel for Respondents shall file a letter affirming that they have released Petitioner Doh. H.

3.  On or before <u>11:00 a.m. CT on May 8, 2026</u>, counsel for Respondents shall also file a declaration pursuant to 28 U.S.C. § 1746 by an individual with personal knowledge that states when and where the Petitioner was released, attaches any and all documentation concerning the Petitioner's release, and affirms with supporting documentation that all property of Petitioner was returned to Petitioner upon release (or, if property is retained, state which property is retained, the legal basis for its retention, and affirm that Respondents duly provided Petitioner with certified copies of any and all immigration-related documentation).  Respondents must submit each of the following three forms to affirm return of Petitioner's property: I-77, I-216, and G-589.  If Petitioner's property is lost, Respondents must also submit form I-387, "Report of Detainee's Missing Property."  If Respondents cannot provide one or more of these forms, Respondents must address why they are unable to do so.

4.  Petitioner Doh H. may move separately within 30 days of final judgment in this action to recover attorney's fees and costs under the Equal Access to Justice Act, 20 U.S.C. § 2412(d).

5.  To the extent Petitioner Doh H. seeks additional relief, the Petition is DENIED.

    LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated:  May 6, 2026                                     /s/ *Jeffrey M. Bryan*
                                                        Judge Jeffrey M. Bryan
                                                        United States District Court

10